**SIMPLEX PAPER BOX CORPORATION et al. v. BOXMAKERS, Inc.**

**No. 7240.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 13, 1940.

Louis Prevost Whitaker, of New York City, and Glen E. Smith, of Chicago, Ill., for appellants.

Franklin M. Warden, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellants charged appellee with infringement of three United States patents to Ralph A. Gross. We shall refer to these patents by the letters A, B and G respectively. A, No. 1,690,109, was issued November 6, 1928, on an application filed November 4, 1926; B, No. 1,758,510, was issued May 13, 1930, on an application filed October 28, 1927; and G, No. 1,940,213, was issued December 19, 1933, on an application filed November 11, 1930. The defenses were invalidity and non-infringement. The court made a special finding of facts, and upon such findings concluded that all of the claims in issue as to each patent were invalid. Upon these conclusions it decreed that the bill of complaint be dismissed for want of equity, and from that decree this appeal is prosecuted.

It is said that these patents represent progressive improvements in folding cardboard or paper boxes, all of which may be incorporated in a single box, which is capable of being shipped and stored in flat condition, and of being instantly erected and positively locked, so that it is incapable of being folded or knocked down by any ordinary use to which the box is subjected. It is claimed by appellants that each of the patents represents a new combination of elements found for the first time in the art, and cooperates to produce new and useful results never before obtained.

Claims 1 to 11 inclusive, of patent A, except claims 5 and 8, are relied upon. Claim 6 is typical:[1]

[1] "6. A knockdown box comprising a blank having a body portion, main side flaps, auxiliary side flaps folded upon and secured to the side flaps, end flaps, locking flaps secured to the outer edges of the end flaps and adapted to fold upon the same, corner sections connecting said main side flaps and end flaps, and provided with diagonal creases dividing them into triangular portions, said main and auxiliary side flaps and corner pieces being folded upon the main body and end

For brevity, figure 1 of patent A is here reproduced:

by pasting, stitching, stapling or otherwise as preferred.

*Fig. 1.*

This figure represents a blank cut by dies out of a single sheet of cardboard and simultaneously creased or scored, to define a central bottom 1, double side walls, 2 and 3, double end walls, 4 and 5, and corner portions, 7 and 8, integral with both the adjacent side and end flaps, and creased diagonally to form two triangular sections. The locking flaps 5 are provided at their ends with locking projections 9, here shown as metal plates. The specification, however, states that these projections may be formed integrally with the locking flaps, and the commercial product is so shown.

These blanks are assembled by the manufacturer by folding and gluing the inner side walls 3 to the outer side walls 2, after which the double side walls are folded over upon the bottom, 1, bringing the integral corner sections upon the end sections 4, and the triangular portions 8 integral with the end walls are secured to the end wall flaps, and one part of each corner section being permanently united to the adjacent end flap, said locking flaps being adapted to fold inwardly upon the end flaps and to enclose the folded triangular

Both ends of the box are erected and locked simultaneously by first raising the end walls 4 into vertical position, which brings up the side walls also and effects the infolding of the triangular corner sections 7 and 8, against the end walls 4, after which the locking flap 5 is folded over the infolded corner sections and the locking projections 9 are made to engage the ends of the inner side walls 3, which are cut away as indicated at 3b, sufficiently to accommodate the locking projections 9, which are thus engaged with the rigid side walls 3 directly in each corner of the box. Thus it is claimed that the infolded corner sections on opposite sides of the box form an actual truss which positively precludes the outward movement of the sides of the box at the corners, thus cooperating with the locking projections and the end edges of the inner side walls 3 to form a positive lock.

portions of the corner sections and to automatically lock with the edges of the auxiliary side flaps when folded on the end flaps."

Patent A is a combination of old elements, and we think that substantially the same combination was disclosed by the French patent to Thiolat, No. 501,056, issued in 1920; also by British patent No. 9,693 to Blake, in 1894; and by United States patent No. 998,497 to Goodyear, in 1911. The differences are that in Gross the inner faces of the box sides are not quite so long as the bottom of the box; and the metal clips 9, as shown in Gross, are not present in the others. However, the commercial product of Gross has discarded these metal clips, and he makes portions of the ends of the locking flap 5 a bit longer than the width of the box bottom. The result is that when the box is set up, the extended ends of flap 5 come to rest back of the ends of the inner side walls at 3b. In Thiolat the inner side walls which correspond to Gross 3 are glued at their centers to the outer wall 2, and are practically the same length as the bottom of the box. This locking flap is of the same construction as Gross' locking flap 5, except that Thiolat has neither the metal clips nor extended ends.

Thiolat has a small embossment at each lower corner of each inner side of the box, so that when the box is set up, his end-locking flaps come to rest behind these embossments, which tend to hold the locking flaps in place. Furthermore, his locking flaps, as in Gross, are wider than the inside bottom of the box by the thickness of the inner side walls. This thickness of the walls in both Gross and Thiolat causes a rather close frictional engagement between the ends of the locking flap and the side walls.

However, in Gross' commercial product under patent A, he does not follow the specifications with respect to flap 5 and its projections. The ends of this flap are not extended at all. It is of the same length as outer end wall 4, just as in Thiolat. Instead of lengthening the ends, he cuts out a small portion about the thickness of the width of the cardboard adjoining the point where 5 hinges upon 4. Likewise, he cuts from each end of 3 by the thickness of the board, except for a small space on each end of 3 where it hinges upon 2. These small spaces near the hinge correspond in size to the cutouts in flap 5 so that when the box is set up, the untrimmed portion of the ends of 3 fit in the cut out places in the ends of 5, and the uncut ends of 5 fit in behind the shortened end portions of 3. In effect, Gross in this combination has merely differed from Thiolat by shortening a portion of each end of 3. This feature was not new, for it was disclosed by the Craw patent, No. 502,952, in 1893, and also by Walker, No. 770,946, in 1904. It also appears in the product of Thiolat, although it is not disclosed in either the drawings or specifications. True, Craw and Walker did not disclose the bellows corners, and for this reason they cannot be considered as completely disclosing Gross' combination.

■ At most, Gross has merely produced a combination of very old elements, but we think that he has not produced a new result, nor has he produced an old result in a more facile, efficient and economical way. Perhaps he has produced a neater result, but the box is no stronger, nor is it more easily operable than Thiolat. We think the District Court did not err in holding this patent invalid.

■ Claims 1, 2, 6, 8, 10 and 11 of patent B are in issue. Claims 2 and 6 are typical.[2] The patent is the same as A with the following exceptions: It merely discloses a small strip on inner sides 3 and the inner ends 5 of patent A, which we refer

---

[2] "2. A knockdown box unit comprising a body portion, side and end flaps secured thereto, integral reinforcing members secured to the side flaps, the longitudinal dimensions of which are less than the same dimensions of the side flaps, a bellows connection between the side and end flaps, means carried by the end flaps for engaging the ends of the reinforcing members and the bellows connection to hold the side and end flaps perpendicular to the body and coacting elements on the reinforcing members and the aforesaid means to lock said means and members against movement when the box is in operative position."

"6. In a knockdown box unit, a body, side and end flaps foldably connected thereto, foldable corner connections between said side and end flaps, a portion of each of which is secured to the end flaps, reinforcing members carried by the side flaps and folded thereupon and secured to said side flaps, locking members foldable upon the end flaps and having means coacting with the reinforcing members to lock the side and end flaps perpendicular to the body, said locking members foldable over the corner connections, and supplemental locking means carried by the locking members and the reinforcing members coacting to hold the locking members in folded position over the corner members."

to as 12. The upper corners of these strips are mitered. When the box is set up the mitered portions of the added strips 12 fit perfectly, and form a complete border on the bottom of the box adjacent its edges. This feature was disclosed in British patent No. 29,223 to Comings in 1904. We are convinced that this added feature is insufficient, when added to the disclosures of patent A, to constitute invention. Conceding without admitting that the combination is new, yet it merely discloses an improvement of one element, namely, the locking means of an old combination, and in all other respects the construction and operation of the device under patent A is unchanged. Under the ruling of Bassick Mfg. Co. v. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, we think this is not patentable. Certainly, the disclosure here did not amount to more than mechanical skill; it produced no new result nor any old result in a more facile, efficient and economical manner, and we think the ruling of the District Court on this patent was correct.

■ Claims 1 to 6 inclusive of patent G are relied upon, and 2 and 4 are typical.[3]

This patent differs from the other two patents in that its sides are single walls, and it has a hinged cover formed integrally with one of the main side sections of the box blank. This top element contains a flap on its front end, and likewise mitered flaps on each end. These are designed to insert into the box after it is filled. The front side of the box contains a flap comparable to 3 of patent A. It is about half as wide as side 2 and is glued to the inner side of front side 2, so that the upper half of front side 2 is a double wall. The ends and their flaps are the same as those in patent B, except that the outer flap which we have heretofore referred to as 12 is mitered from the top inwardly instead of outwardly as in patent B. The widest portion of the mitered flap is a bit wider than the bottom of the box which serves to make its frictional engagement with the sides greater. These outer flaps lie flat on the bottom of the box, but there are no miter strips connecting them as in patent B, because here the side walls are not double. With this exception, the locking features are precisely the same as in patent B. Here, too, the elements are all old. What has been said with respect to the other two patents is applicable here, with the exception of the integral hinge cover. That, too, is quite old in the art and required nothing more than mechanical skill to add it. We are convinced that the District Court did not err in holding these claims invalid.

Decreed affirmed.

---

[3] "2. An instantly erectable knockdown paper box comprising a bottom section, integral side and end sections and corner portions integral with the adjacent side and end sections, and each divided into sections by diagonal scoring to permit said corner sections to infold upon each other and upon the adjacent end sections and thereby positively prevent the spreading apart of the outer edges of the opposite side sections adjacent to the end sections, said end sections being provided at their outer ends with end locking sections hinged thereto, and foldable over said infolding corner sections, said locking sections being each provided at its outer edge with a bottom engaging locking section of slightly greater width than the bottom section, and providing end wedge portions for effecting a frictional and wedging engagement with the opposite side section adjacent to the union of said side sections with the bottom section."

"4. An instantly erectable knockdown paper box comprising a bottom section, integral side and end sections, an auxiliary infolding side section integral with one of said side sections, a cover section united hingedly to the other side section, and corner portions integral with adjacent side and end sections and each divided into sections by diagonal scoring, to permit said corner sections to infold upon each other and upon the adjacent end section, to positively prevent the spreading apart of the outer portions of the opposite side sections adjacent to the end sections, said end sections being provided at their outer ends with end locking sections hinged thereto and foldable over said infolding corner sections in the erected position of the box, each of said locking sections being provided with locking wedge portions for effecting a frictional and wedging engagement with the opposite side sections adjacent to the infolding corner sections, said auxiliary infolding side section being cut away at each end to provide a locking shoulder to interlock with the adjacent ends of said locking sections."