CARLSON & SULLIVAN, Inc. v. BIGELOW & DOWSE CO. et al.

Civ. A. 50–909.

United States District Court
D. Massachusetts.

April 3, 1952.

Hector M. Holmes, Boston, Mass., for plaintiff.

Robert L. Thompson, Dike, Thompson & Sanborn, Boston, Mass. (T. Clay Lindsey

532

and John Prutzman, Hartford, Conn., of counsel), for defendant.

## McCARTHY, District Judge.

This is a typical action for patent infringement. The defenses are the usual ones, denying the charge of infringement and alleging the invalidity of the patent in suit, United States Patent No. 2,510,939 for ruler construction granted June 6, 1950 to F. O. Carlson on an application filed February 15, 1945.

The plaintiff is Carlson & Sullivan, Inc., a California corporation admittedly the owner of the patent in suit.

The defendant Bigelow & Dowse Company is a Massachusetts corporation doing business in this district, and the defendant The Stanley Works, a Connecticut corporation, is the manufacturer and vendor to Bigelow & Dowse Company of the accused structures, rules bearing Model Numbers 346, 348 and 3410.

The claims involved here may be divided into four groups: I—claims 2 and 16; II—claims 10, 13, 14 and 17; III—claims 6, 7, 8 and 11; IV—claims 12 and 15.

This patent relates to a rule having a blade which is adapted to be coiled in a case by means of a spring anchored at one end within the case and having its other end connected to the inner end of a blade or ruler. Two of the claims (2 and 16) refer to concavo-convex blades.

For validity the plaintiff relies primarily on a claimed long-felt want of a rule so constructed that the blade could be replaced without taking the case apart and using special tools.

Claim 2 discloses a case for a coiled steel ruler with an opening through which the ruler may pass, and ruler guide means defining a passageway with parallel "inclined" surfaces—surfaces positioned at a slight angle downward from the mouth of the case toward the base. The ruler when partially withdrawn from the case is therefore "crimped" or bent to some degree at the inner end of the guide means, which crimping provides a braking action to counteract the retracting action of the spring. The inclined surfaces are intended to effect the result of keeping the ruler in any desired withdrawn position; the "bend" and braking action becoming progressively greater as the ruler is withdrawn.

Claim 16 discloses the same elements and calls for a concavo-convex steel ruler. The lower surface of the guide means engages a portion of one side of the ruler, while the upper surface engages a portion of the other side of the ruler creating frictional resistance to free passage of the ruler.

Coilable rules of the push-pull type having a case, a wind-up spring and a concavo-convex steel blade, adapted to be drawn into the case by the spring through an opening or mouth, were old and well known long prior to the patent in suit. This much is inescapably clear. Rulers of this type are shown in various prior art patents including Witchger, No. 1,964,380, Volz, No. 1,983,-202 (a Stanley rule), and Carlson, No. 2,-132,202 (a Master rule).

The case element is old in the art as is the concavo-convex steel blade. Neither is the provision of ruler guide means defining a passageway with parallel surfaces new with these claims. The Master Rule Manufacturing Company, Inc., prior to February 15, 1944, manufactured and sold a "Master rule" (Chart Deft.Exh.H) with such a passageway. The upper and lower surfaces were parallel to each other and parallel to the bottom of the case. The lower side of the blade was adapted to engage the lower surface of the guide means and the edges of the upper side of the blade engaged the inner end of the upper guide means. When the blade was withdrawn, the blade bent about the inner end of the upper guide and the extent of bending increased as the blade was progressively pulled out and the force of the spring increased.

The sole novel feature disclosed by these claims, therefore, is the *inclination* of the parallel surfaces of the guide means which form the passageway. This feature represents an improvement in the art in two respects. The spring in a coilable steel rule tends to wind the blade into a coil. Since the blade itself tends to retain a longitudinal straight line it resists winding and is urged resiliently against the lower

edge of the opening in the casing (where there is no defined passageway leading to the opening). That portion of the blade which is withdrawn from the case, therefore, also inclines downward from the mouth of the case. The use of the guides set at a slight angle with respect to the plane determined by the bottom of the case causes the blade when withdrawn to assume a position more nearly parallel to the plane. Secondly, an increased "crimping" or binding action is effected by the inclination of these guide means; hence, this feature provides a more effective method of keeping a ruler in a desired withdrawn position.

I do not find that any prior art rule strictly anticipates this feature. On the other hand, while this represents an improvement in the art, it is not such a substantial innovation as to amount to invention or discovery. McCord Corp. v. Beacon Auto Radiator Co., 1 Cir., 193 F.2d 985, 990. Neither claim 2 nor claim 16 defines a patentable invention.

It may also be helpful to state my views upon the issue of whether or not the accused structures infringe claims 2 and 16. The claims disclose a passageway having a pair of parallel ramp-like surfaces inclined at an angle to the plane of the bottom of the casing, the blade engaging the faces of both the upper and lower ramp surfaces. The accused structures do not fall within the terms of these claims. None of them has a pair of parallel ramp-like surfaces. They have what might be called conveniently an upper guide means with a nub at the inner end.

Claims 10, 13, 14 and 17 are directed to providing a wind-up spring long enough that a detachable connection between the spring and the ruler can be withdrawn from the casing when it is desired to replace the blade.

Claim 10 calls for a spring of "sufficient length to enable its outer end to be drawn from the case before the coiled remainder within the case reaches a tightly-wound condition".

Claim 13 adds a coupling part on the free end of the spring, embodying a recessed edge to form a shoulder.

Claim 14 calls for a ruler provided at its inner end with coupling means joined to the coupling means of the spring, and

Claim 17, which is typical of the group, additionally recites a locking hole spaced inwardly along the spring from the coupling means and adapted to receive a locking pin for holding the coupling means against retraction into the case.

Detachable connections (coupling between the blade and the wind-up spring) are old in the art. There is no need for a lengthy consideration of the prior art on this feature. Gasstrom, No. 2,080,815 shows a typical keyhole type of coupling. Invention, if it exists here, lies in making a spring longer so that it can be withdrawn from the casings. This, however, regardless of its value, in the light of the more severe test of invention now required, although it certainly must be described as an improvement in the art, does not meet the test of what constitutes an inventive contribution. Associated Folding Box Co., Inc. v. Levkoff, 1 Cir., 194 F.2d 252.

Providing a locking hole spaced inwardly along the spring from the coupling means to prevent the spring from snapping back into the case when the ruler is detached does not amount to invention either. This expedient is as obvious as tying a slip knot in a window cord to prevent the weight from carrying the free end of the cord through the pulley while preparing to attach the free end to the window frame.

Claims 6, 7, 8 and 11 relate to a tongue and slot arrangement in the outer or free end of a wind-up spring, adapted to cooperate with a steel ruler.

The end of the spring is inserted into a keyhole slot as was done with many prior art rules including Gasstrom, No. 2,080,815, referred to above, and the Master rule depicted in Chart Deft.Exh.H.

What Carlson added to this connection was a tongue on the extreme free end of the spring and one or more cross slots in the inner end of the blade, the tongue being constructed so that it could be laced in the slots.

These claims are obviously invalid for want of invention. We have here at the

most an improved type of tongue and slot connection, so constructed that it passes easily through the ruler guide means without jamming. All the elements are old and they perform no new function in this combination. Lincoln Engineering v. Stewart Warner, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008.

I note in passing that the end of the spring on the accused rules (They are the same for all practical purposes except for the length of the blade.) has no tongue and the blade has no cross slots through which the tongue could be laced. Instead a clip is carried by the blade, with lugs which turn over the spring end. A tool is necessary to take apart the coupling.

There is no need for an extended discussion of Claims 12 and 15. Each of them aggregates features of claims already considered, and since the latter are invalid, these too must fail.

To summarize, Carlson's rule is not a radically different one. The improvement which he made does not amount to such an innovation as to warrant a finding of invention. He solved a problem—that of constructing a rule so that the blade could be replaced outside the casing, but this was not startling or revolutionary, especially when one considers that although the springs in prior art rules were not normally adjusted so that their free ends could be withdrawn from the casings, they could be so adjusted simply by assembling the parts with two fewer turns in the wind-up spring.

Complaint dismissed.