**ALFORD CARTONS**

v.

**GORDON CARTONS, Inc. et al.**

**Civ. No. 6799.**

United States District Court,
D. Maryland.

May 14, 1954.

Pennie, Edmonds, Morton, Barrows & Taylor, Merton S. Neill, New York City, & Stanton T. Lawrence, Jr., Rutherford, N. J., and Bowie, Burke & Leonard, Daniel B. Leonard, Baltimore, Md., for plaintiff.

Bernard F. Garvey, Washington, D. C., and Thomas J. Kenney, Baltimore, Md., for defendants.

COLEMAN, Chief Judge.

This is a suit for infringement of a patent to Oscar L. Vines, No. 2,643,813. issued June 30, 1953, on application of August 24, 1951, for a folding paperboard carton adapted to contain fruit, more commonly known as a tomato tray.

The plaintiff, Alford Cartons, hereinafter referred to as Alford, to which the Vines patent was assigned on June 30, 1953, is a New Jersey corporation with its principal place of business at Ridgefield Park, in that State, where it manufactures and sells many types of paperboard folding cartons and boxes. One of the defendants, Gordon Cartons, Inc., hereinafter referred to as Gordon Baltimore, is a Maryland corporation with its

principal place of business in Baltimore. The other defendant, Gordon Cartons of Michigan, Inc., hereinafter referred to as Gordon Michigan, is also a Maryland corporation with its principal place of business at the same address as that of defendant Gordon Baltimore, where both are engaged in the manufacture and sale of paper-board folding cartons and boxes. The defendant companies derive their name from one Allen A. Gordon who originated the business of the two defendants. Upon the death of Allen A. Gordon, Gordon Michigan became a wholly owned subsidiary of Gordon Baltimore.

To the present complaint, which was filed on August 18, 1953, both defendants filed a motion for summary judgment on the ground that the Vines patent was anticipated by the prior art. The motions, after full argument were denied; the defendants admitted infringement, and trial was had in due course upon the sole issue of the validity of the Vines patent which embraces five claims, all of which are in suit. Defendants have not emphasized any distinction between the claims as respects their validity, it being asserted that all are equally invalid for the reason: (1) what is claimed is per se lacking in invention; (2) the claims are anticipated by prior art patents; (3) also by prior use; and (4) there has been no commercial use of the patent. It is deemed sufficient to quote merely the first of the five claims, which is as follows: "1. A carton blank of substantially rectangular shape provided with two parallel fold lines extending longitudinally the full length of the blank, each of said longitudinal fold lines being disposed substantially the same distance from and parallel to the longitudinal sides of the blank, the blank being further provided with a first pair of parallel fold lines each of which extends transversely across a separate end portion of the blank at substantially the same spaced distance inwardly therefrom and with a second pair of parallel fold lines each of which extends transversely across a separate end portion of the blank at substantially the same distance inwardly from the proximate fold line of the first pair as the distance between the said proximate fold line and the proximate end of the blank, the blank further having four separate fold lines extending diagonally outwardly to the two sides of the blank at an angle of about forty-five degrees thereto from each of the four intersections of the two longitudinal fold lines and the two transverse fold lines of said second pair thereof, the portion of each end of the blank defined by the two longitudinal fold lines, the end of the blank and the transverse fold line proximate thereto being provided with an outwardly arched cut line having its ends positioned adjacent the intersections of said longitudinal fold lines with said proximate transverse fold line, the ends of the blank being provided with an outwardly projecting tongue portion, and the body of the blank being provided with a substantially centrally disposed transverse cut line adjacent the inboard side of each of the transverse fold lines of said second pair thereof."

Vines, in his introduction to the specifications of his patent, after stating that his folding carton "is of the knockdown, set-up type such that the carton in its knocked-down condition can be set up by a bending motion applied to the end portions of the carton", thus summarizes recent developments in this art: "There has been extensive development in recent years of folding cartons suitable for use in the packaging of fruit such as tomatoes and the like. These tomato trays, as they are generally referred to, are commonly provided with an open top so that the filled tray can be subsequently wrapped with a transparent material which will leave the contents of the tray exposed to view. A particularly successful form of tomato tray has thus been developed in which the tray is composed of a blank having two side panels folded over and inwardly on top of a central panel about two fold lines extending longitudinally of the blank so as to form a substantially flat structure in the

knocked-down condition. For erection of the folded tray, each end portion of the flat structure is folded upwardly about an inner transverse fold line so that a folding web, defined in each of the two side panels adjacent the transverse fold line, causes the side walls to assume an upstanding position. In the resulting structure it is particularly important that the end walls of the erected tray stand straight and provide strength for not only the ends of the carton but also for the adjoining portions of the side walls of the carton. An additional feature which is generally required in such structures is a flap at each end of the carton adapted to project inwardly a short distance from the upper edge of each end portion. The purpose of these inwardly projecting flaps is to provide a horizontal platform upon which another filled tray can be supported when a plurality of the filled trays are stacked for shipment or display."

Following this introductory statement Vines gives a recital of what he claims to be the features of his folding carton, when read in the light of the specifications and the drawings of the patent, involving novelty in construction, greater economy in production and increased utility over anything in the prior art. These features, summarized, are eight in number, as follows: (1) the scoring or perforated line for folding extends the full length of the blank form; (2) the arched shape cut in the end of the bottom of the blank form extends in the direction of the extreme end of the form; (3) the extensions of the two side walls are folded so as to form a double thickness end wall structure; (4) when this double thickness end wall is first raised to its vertical position, outward distortion of the side walls causes the end wall structure to open; (5) as the upper half of the double thickness end wall is folded forward, even though slightly, any tendency to support the end walls outwardly is resisted because such folding of the double thickness end wall locks in place the remaining inner portion of the end wall structure; (6) the particular portion of the double end wall structure which is folded forwardly and inwardly is locked in its upright final position by the tongue at the extreme end of the blank form, which fits into a slot in the bottom panel of the form; (7) the arched shape cut in the extension of the bottom of the blank form is fashioned from the innermost surface of the double thickness wall section that is folded into the tray; and (8) the structure of double thickness remaining after the arched shape flap has been cut out of the ultimate extension of the bottom of the blank, this double thickness structure being along both side edges of that portion of the end structure which fits into the interior of it, causes the two webs at the ends of the side walls to be hugged or pressed closely, both on their outer and inner surfaces, by the double thickness of the end wall, thus giving to both the end and side wall structure rigidity that counteracts buckling or breaking.

The testimony discloses that the folding carton industry, while of comparatively recent origin, is, nevertheless, one crowded with many types of cartons and that the competition is very great. It also discloses that the more recent modern merchandising methods, particularly of the so-called super-markets, have greatly increased the use of all sorts of containers, especially paper-board cartons. The testimony further indicates that sales of tomatoes in cartons of one form or another have become increasingly great each year, reaching at the present time sales of billions of tomatoes in such containers; that about 90% of the tomatoes thus sold in approximately the past ten years has been in cartons made by the Standard Folding Tray Company of Brooklyn, and that the next largest producer of cartons used in the tomato trade has been the Associated Folding Box Company of Boston. It is asserted on behalf of the plaintiff company that carton manufacturers generally have long endeavored to design and manufacture a tomato tray that could economically compete with that of the Standard Folding Tray Company, but have been un-

successful until the advent of the Vines invention.

In this crowded and highly competitive field involving the art of making knock-down paper-board cartons, considerable litigation naturally occurred. Three patents to Ralph A. Gross, Nos. 1,690,109, 1,758,510 and 1,940,213, respectively, are the earliest litigated patents to which we have been referred. See Simplex Paper Box Corp. v. Rosenthal Paper Co., 8 Cir., 104 F.2d 349, and Simplex Paper Box Corp. v. Boxmakers, Inc., 7 Cir., 116 F. 2d 914. All three Gross patents were held invalid in these decisions on the ground of anticipation by the prior art. They are not among the references cited in the file of the Vines patent in the Patent Office. But we do not feel that it is necessary to analyze these patents or the above mentioned decisions which held them invalid, because the cartons covered by these patents were of an extremely simple, and different character from the Vines carton. A mere glance at their construction as shown by the drawings attached to these patents shows that they bear such little resemblance to the Vines carton as to have no relevancy to the present litigation except to show the early state of the art.

The next stage in the litigation to which we have been referred, as reported in published decisions, involved the patent No. 2,342,551 to David Levkoff, issued February 22, 1944. In Associated Folding Box Co. v. Levkoff, 194 F.2d 252, the first Circuit Court of Appeals held this patent invalid for lack of invention. The Court in its opinion stated, 194 F.2d 252, 257: "The specific problem to which Levkoff addressed himself, that of providing stiff ends for a collapsible box or tray which could be cheaply stamped out of a single sheet of cardboard and quickly erected, was not particularly old, and it would not seem to be especially baffling. So far as we can tell from the record the problem was not one which had gravely perplexed the trade for years, or one that had been given lengthy and exhaustive study by numerous experts. Levkoff's solution was ingenious, and no doubt it was welcome, but on the record we cannot say that it was startling or revolutionary. In short, we think he did not make an inventive contribution to his art, but merely accomplished an ingenious perhaps, but still minor improvement in it, and that his commercial success, such as it was, cannot save his patent, for the issue of invention is not here in doubt.

"The Court below, therefore, erred in using a less exacting standard of invention for judging the validity of the claim for a combination made up entirely of old components than that required by the Great Atlantic & Pacific Tea Co. case, supra, [Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162], and in consequence its judgment cannot stand."

This Levkoff patent is cited in the file of the Vines patent in the Patent Office, but we consider it unnecessary to analyze it because the construction involved in the Levkoff carton is materially different from that of the Vines carton, and does not anticipate the development in the art reflected in the Vines patent with which we are concerned.

The last step in the reported litigation is found in the case of Himes v. Chadwick, 199 F.2d 100, a decision of the Ninth Circuit Court of Appeals, in 1952, involving patent No. 2,011,232, issued to Parks on July 26, 1948, and patent No. 2,243,421, issued to Ross A. Himes on May 21, 1941. These patents were likewise found invalid for want of invention over the prior art. They were not cited as references in the file of the Vines patent in the Patent Office, and we do not find such similarity between the carton covered by either of these patents to warrant detailed consideration of them. They do not anticipate the development in the art reflected in the Vines patent in suit.

In addition to the six patents declared invalid in the decisions to which we have just referred, namely, three patents to Gross, one to Levkoff, one to Parks and one to Himes, the defendants rely upon seven other patents as supporting their contention that the Vines patent is an-

ticipated by the prior art, five of which were cited as references in the file of the Vines patent in the Patent Office. These five are as follows: No. 991,052 to Draper, issued May 2, 1911; No. 1,471,478 to Feigelman, issued November 23, 1923; No. 2,136,797 to Lee, issued November 15, 1938, No. 2,274,714, being another patent to Levkoff issued February 22, 1944, that is, earlier than the one adjudicated in Associated Folding Box Co. v. Levkoff, supra; and No. 2,532,808 to Grinnell, issued December 5, 1950. The two remaining patents relied upon, not cited as references to Vines, are No. 2,-563,145 to Winkler, issued August 7, 1951, and No. 2,573,379 to Acker, issued October 30, 1951.

In addition to the Levkoff patent No. 2,342,551 to which we have referred, the following seven United States patents and one Canadian are cited as references in the file of this patent as issued by the Patent Office: patent to Draper, No. 991,052, issued May 2, 1911; to Feigelman, No. 1,471,478, issued October 23, 1923; to Lee, No. 2,136,797, issued November 15, 1938, to Levkoff, No. 2,274,-714, issued March 3, 1942; to Williams, No. 2,385,363, issued February 19, 1946; to Grinnell, No. 2,532,808, issued December 5, 1950; to Painter, No. 244,544, issued June 5, 1951; and Canadian patent No. 473,462, issued May 8, 1951.

The file wrapper with respect to the Vines patent is relatively brief and contains practically nothing which this Court has found of any real aid in relation to the question of validity of the Vines patent. Following its usual practice, which this Court deplores and has criticized in previous opinions, the Patent Office held all of the five claims of the patent valid without indicating wherein the invention was found to lie. The examiner twice rejected the claims on prior patents, especially those to Draper, Feigelman, Lee, Levkoff and Grinnell. In his first official action, the examiner found no invention involved in providing the end of the blank of Draper with an arched cut line as taught by Lee; or in providing the ends of Draper's

blank with tongues, or in having a cut adjacent to the inner transverse fold lines, as taught by Levkoff No. 2,274,714. In his second official action, the examiner again rejected the claims on Feigelman. Thereupon, after various amendments, counsel for applicant argued to the examiner that the Vines invention was characterized by an end structure composed of two sections of double thickness, the edges of each section being formed by a fold line which has great rigidity, with the result that the end structure held erect by the webs stands rigidly upright, which it was alleged is not true with respect to the cartons covered by the prior art, because there the inner section of the end wall structure is composed of only a single strip of paperboard. Finally, as already stated, the examiner allowed all of the claims in suit without any further explanation.

In presenting defendants' case to this Court, defendants' counsel relied primarily, first, upon the Draper patent, because of its having both inner and outer end walls of double thickness; second, upon Feigelman, as disclosing the arc-shaped cut in the ultimate extension of the bottom of the blank, beginning at the fold line and extending outwardly to the blank's extremity; and they also relied upon Levkoff and Grinnell, as disclosing the tongue or tab and slot to receive it. Thus, in summary, it is the defendants' contention that combining the disclosures of these four prior patents in the Vines carton is all that Vines did, and that, therefore, this was not invention since it merely amounts to combining old elements without producing a new result or an old result in a simpler, more efficient or more economical manner.

In order to determine whether there is merit in this contention of defendants, it is necessary to analyze more completely just what the art prior to the issuance of the patent in suit to Vines did, in fact disclose. Chronologically, the disclosures are as follows: Draper, as early as 1911, disclosed both inner and outer end walls of double thickness. However, Draper failed to disclose anchoring the

368

end walls inside of the structure so as to keep them in position. Such anchoring or securing was done by Draper by putting another Draper carton inside or outside of the first one. Next, Feigelman, in 1923, disclosed an arc-shaped flap cut from the inner end wall structure. However, Feigelman's inner wall has only a single thickness both as respects the outer and inner end walls. Also, the arc-shaped flap in Vines is cut not from a single thickness inner end wall structure as in Feigelman but from an end structure which, when in position, has a double thickness of both its inner and outer walls. Next, in 1942, and in 1950, Levkoff and Grinnell disclosed the tongue or tab with slot for its insertion, Levkoff being embodied in the carton of the Standard Folding Trays Corporation and Grinnell in those of the Associated Folding Box Company, which, as previously stated, are the most successful in the market today.

Thus, by embodying in Draper the disclosures of Feigelman, Levkoff and Grinnell, defendants assert that Draper becomes the equivalent of Vines. Cartons embodying this combination were introduced as exhibits at the hearing with the assertion that to make such combination required no special skill or invention, and it was no real novelty but was merely the normal product of what anyone might do, having before him these patents that succeeded Draper in a crowded art. It is to be noted, however, that unlike Draper, Grinnell and Levkoff embody only a single inner wall end structure and also that defendants' modification of Draper, in order to embody the additional disclosures of Feigelman, Levkoff and Grinnell, was not put into actual commercial use prior to the Vines disclosure. On behalf of Vines, it is contended that the aforegoing modifications of Draper, in order to defeat the validity of Vines, embody a "jump" ahead, so to speak, in the art, which was never conceived until the Vines patent issued.

Plaintiff also contends that a second "jump" is made by defendants before they accomplish what has been accomplished by Vines, and that this "jump" is not disclosed by the prior art, namely, that Draper, when modified as explained above, in order to copy Vines, has no provision for an end flap. It is true that the patents both to Lee and Feigelman do so provide, but both Lee and Feigelman have single thickness of both inner and outer end walls. Lee cuts the flap out of the outer single thickness end wall. Feigelman cuts it out of the inner single thickness end wall. Thus, as is contended on behalf of Vines, defendants make a so-called second "jump" which is not disclosed or suggested in the prior art, by cutting out a flap from the inside single thickness wall of Feigelman. This is designated by plaintiff as the third phase of the evolution of Draper which defendants are forced to make in order to produce a carton corresponding, in basic features of construction, to the Vines carton. It is to be noted that this last combination in the evolution that defendants use to reproduce Vines was never manufactured or used commercially until defendants became aware of the issuance of the Vines patent and copied the structure thereby disclosed. Not until Vines was there any carton that had the support or tie-up between the side and end walls, whereby the former are prevented from spreading and pulling out from the latter by having the webs on the ends of the side walls made snug, on both their inner and outer surfaces, against a double thickness of both the inner and outer end walls.

The defendants admit infringement. They make no contention that the claims are not responsive to the specifications, or that there are involved in this proceeding any issues respecting the breadth of any of the claims. Furthermore, this is not a case of an infringer who, prior to having seen a plaintiff's patent, has pieced together what the prior art has disclosed in various patents. But it is a case of an infringer who has done this piecing together only after he has seen the patentee's invention as disclosed by the patent. The imitation by

another who denies invention of a patented device is strong evidence of what the imitator himself thinks of the patented device, and of what should be thought of it generally. See Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910; Ackermans v. General Motors Corp., 4 Cir., 202 F.2d 642; Enterprise Mfg. Co. v. Shakespeare Co., 6 Cir., 141 F.2d 916.

The testimony of defendants that they have had difficulty in selling cartons that admittedly infringe the Vines patent has little probative value on the question of the latter's validity, in view of what has just been stated. Furthermore, such failure appears to have been due, as claimed by counsel for plaintiff, primarily to the fact that defendants have had to sell their carton blanks flat-folded for setting up machines already built for producing a different type of carton, namely, the Standard and Associated cartons. Also, while the absence of any proof of plaintiff's commercial success with the patented device is one of the factors to be taken into account as bearing upon the patent's validity, nevertheless, such is not conclusive against validity. It is admitted that the Vines structure has not as yet been produced commercially by plaintiff as a tomato tray, or as a tray or carton for any other perishable commodity. However, it has been manufactured and sold in reduced size as cartons for glass cutters, and the plaintiff company has received numerous applications for licenses under the Vines patent, which have been temporarily refused until the plaintiff company could supply prospective licensees with what it considers completely acceptable machines for setting up the Vines cartons,—machines to which the plaintiff company is still devoting much attention. The Vines patent was issued less than ten months ago.

In view of all of the aforegoing circumstances, we conclude that the absence of proved commercial utility is not to be taken as proof of lack of invention in the Vines patent. The fact of non-user is entitled to some weight as bearing upon the utility of an article or device, but, as in the present case, it becomes of little significance where the patent has but recently been issued and its use requires the construction of expensive machinery. Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 F. 845, a decision of the Circuit Court of Appeals of this, the Fourth, Circuit. See also Eastern Paper Bag Co. v. Continental Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Id., C.C., 142 F. 479; Continental Paper Bag Co. v. Eastern Paper Bag Co., 1 Cir., 150 F. 741. It is true that plaintiff's claim for the almost revolutionary character of the Vines patent, when its commercial success still remains to be proved, appears to be somewhat extravagant. However, we believe it has been proved by the weight of the credible testimony that carton manufacturers have continually been striving to design and manufacture a tomato tray that could economically compete with the established Standard tray. We do not say, as contended by Vines, that his invention is the first substantial contribution to this art since the advent of the Standard tray, or that it is a tray that may be made more economically than, or is bound successfully to compete with the latter. We simply find that the prima facie presumption of validity of the patent has not been rebutted by the weight of the credibile testimony in the present case, based upon our analysis of the prior art. We so decide because, although admittedly a close or border-line case, we believe there is novelty coupled with commercial utility entitling the Vines structure to patentable status, under the controlling decisions as we interpret them, for the reason that Vines was the first to design and manufacture a paper-board folding carton, requiring no gluing, with very rigid support or tie-up between the side and end walls whereby the former are prevented from spreading and pulling out from the latter by having the webs on the ends of the side walls made snug, on both their inner and outer surfaces,

against a double thickness of both inner and outer end walls. Rigidity of both side and end walls of paper-board cartons, used for tomatoes and the like, is proven to be one of the most important factors involved in handling, so that the contents of such cartons will not be bruised or crushed. The Vines structure appears to afford such rigidity to a greater extent than any other comparable carton disclosed by the evidence, and to have accomplished this by an ingenious and hitherto undisclosed combination of parts.

The fact that the Patent Office did not have before it, when considering the Vines structure, all of the patents to which this Court has been referred in the course of the trial is not, we believe, of any real importance, because the additional patents relate to structures unlike the Vines structure, such as the three patents to Gross, one of the patents to Levkoff, No. 2,342,551, and two patents to Himes,—the invalidity of all of which has been established by decisions to which we referred in the early part of this opinion. Dissimilarity also is true, we believe, of patent to Winkler, No. 2,563,145 and to Acker, No. 2,573,379, which are not embraced among the references cited in the Vines file of the Patent Office.

■ The act of invention "consists neither in finding out the laws of nature, nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device, or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form." U. S. v. Dubilier Condenser Corp., 289 U.S. 178, 188, 53 S.Ct. 554, 557, 77 L.Ed. 1114. In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 129, 95 L.Ed. 162, the Supreme Court said that while prior to that decision it "has sustained combination patents, it never has ventured to give a precise and comprehensive defini-

tion of the test to be applied in such cases." Then it proceeded to give such definition, as follows: "The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' * *

"Neither court below has made any finding that old elements which made up this device perform any additional or different function in the combination than they perform out of it. This counter does what a store counter always has done—it supports merchandise at a convenient height while the customer makes his purchases and the merchant his sales. The three-sided rack will draw or push goods put within it from one place to another—just what any such a rack would do on any smooth surface—and the guide rails keep it from falling or sliding off from the counter, as guide rails have ever done. Two and two have been added together, and still they make only four.

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." 340 U.S. 147, 150–153, 71 S.Ct. 127, 129.

But in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, at page 279, 64 S.Ct. 593, at page 594, 88 L.Ed. 721, in which the Supreme Court held valid and infringed a very narrow patent in a crowded art for a leak-proof dry cell for a flashlight battery, the Court said: "Viewed after the event, the means Anthony adopted seem simple and such as should have been obvious to those who work in the field, but this is not enough to negative invention."

■■ While, as explained, the present case is on the border-line, we believe that the defendants have not sustained the burden of establishing the invalidity of the Vines patent. This burden is by law imposed upon them. 35 U.S.C.A. § 282. Therefore, narrow as the ground may be upon which the validity of the patent is supported, it nevertheless should tip the scales in favor of patentability under all the circumstances as disclosed by the evidence.

A decree will be entered in accordance with this opinion holding all five claims of the Vines patent valid and infringed.