**GORDON CARTONS, Inc., and Gordon Cartons of Michigan, Inc., Appellants,**

v.

**ALFORD CARTONS, Appellee.**

**No. 6818.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1954.

Decided Dec. 27, 1954.

Bernard F. Garvey, Washington, D. C., and Thomas J. Kenney, Baltimore, Md., for appellants.

Merton S. Neill, New York City (Bowie, Burke & Leonard, Baltimore, Md., Pennie, Edmonds, Morton, Barrows & Taylor, New York City, and Stanton T. Lawrence, Jr., Rutherford, N. J., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought for infringement of United States Patent No. 2,643,-813 issued on June 30, 1953 to Oscar L. Vines, assignor to Alford Cartons, Inc., the plaintiff in the District Court. The patent relates to folding cartons of cardboard of the knocked-down set-up type extensively used in food stores for the packaging of fruit, such as tomatoes and the like. Infringement was admitted and the validity of the patent was sustained by the District Judge, who observed that the issue of patentable in-

vention presented a close question. 121 F.Supp. 363.

The folding carton industry has been one of intense activity and in the modern merchandising of food, especially in so-called super markets countless millions of tomato trays are used every year. As was to be expected, the industry developed an efficient tray which, as Vines himself conceded during the trial, is entirely satisfactory and unobjectionable. Indeed the evidence shows that the patent in suit was deliberately designed by Vines in the employ of Alford Cartons, a manufacturer of folding boxes, to enable it to compete successfully with Standard Folding Tray Company which has produced 90 per cent of the tomato cartons used in this country in the past ten years, and with Associated Folding Box Company, the next largest manufacturer of the article.

In view of the usefulness and popularity of the device, it was inevitable that efforts to improve it and to patent new or changed forms should be made over the years; but the field has been crowded, and it is noteworthy that most of the patents recently issued have been declared invalid as embodying merely improvements or changes within the competence of persons skilled in the art. In the following cases patents on collapsible paperboard boxes were held invalid, since in each case the features relied on as improvements were found in earlier structures and it was held that there was no inventive contribution to the art in combining them. For example, three patents issued to Gross in 1928, 1930 and 1933 for a box with a locking device which could be instantly erected from a flat to a receiving position were invalidated in Simplex Paper Box Corp. v. Rosenthal Paper Co., 8 Cir., 104 F.2d 349, and Simplex Paper Box Corp. v. Boxmakers, 7 Cir., 116 F.2d 914; the Levkoff patent No. 2,342,551 issued in 1944 for a collapsible box with stiff ends was declared invalid in Associated Folding Box Co. v. Levkoff, 1 Cir., 194 F.2d 252; and the patent to Himes No. 2,-243,421 of 1941 and the patent to Parks No. 2,011,232 of 1945 for collapsible boxes easily erected by hand into locking position were invalidated in Himes v. Chadwick, 9 Cir., 199 F.2d 100.

The essential character of the boxes shown in these cases, as well as in the case at bar, is well described in the following excerpt from the opinion in Associated Folding Box Co. v. Levkoff, 1 Cir., 194 F.2d 252, 253, 254:

"Boxes or trays of the type involved are ordinarily stamped out of a single sheet of cardboard. In its most rudimentary form a stamping, or blank as it is called, for a folding box would be either a square or a rectangular piece of cardboard, depending upon the shape of the box desired, having score lines or grooves equidistant from and parallel to each of its four sides and spaced inwardly from the edges of the blank the distance desired for the height of the box. These score lines of course intersect at four points, each point inward from a corner of the blank, and because the lines are all equidistant from the sides, and each is parallel to a side, the score lines define a square at each corner of the blank. The square area so defined is called a corner web, and it is divided into two triangular portions called corner web sections by a diagonal score line extending from the point of intersection of the longitudinal and transverse score lines previously described outward to the corner of the blank. Thus when the side portions and end portions of the blank are bent upward on the longitudinal and the transverse score lines respectively as hinges to form the side panels and end panels of the box, each corner square can be folded inwardly on the diagonal score line across it and the double thick triangular pieces of material resulting can then be folded against and fastened by gluing, stapling, sewing, or any other ap-

propriate method, to either an adjacent side wall or end wall to hold the box erected."

The Vines structure is shown in the diagrammatic drawings of his patent which are set out below:

**June 30, 1953**     O. L. VINES     **2,643,813**

CARTON

Filed Aug. 24, 1951

## FIG. I

## FIG. 3

## FIG. 4

* Claim 1. A carton blank of substantially rectangular shape provided with two parallel fold lines extending longitudinally the full length of the blank, each of said longitudinal fold lines being disposed substantially the same distance from and parallel to the longitudinal sides of the blank, the blank being further provided with a first pair of parallel fold lines each of which extends transversely across a separate end portion of the blank at substantially the same spaced distance inwardly therefrom and with a second pair of parallel fold lines each of which extends transversely across a separate end portion of the blank at substantially the same distance inwardly from the proximate fold line of the first pair as the distance between said proximate fold line and the proximate end of blank, the blank further having four separate fold lines extending diagonally outwardly to the two sides of the blank at an angle of about forty-five degrees thereto from each of the four intersections of the two longitudinal fold lines and the two transverse fold lines of said second pair thereof, the portion of each end of the blank defined by the two longitudinal fold lines, the end of the blank and the transverse fold line proximate thereto being provided with an outwardly arched cut line having its ends positioned adjacent the intersections of said longitudinal fold lines with said prox-

As shown in Fig. 1, the Vines carton or tray consists of a substantially rectangular blank which is made of cardboard. The blank has longitudinal fold lines 10 and 11 which extend the full length of the blank, as well as two pairs of transverse fold lines, the first pair being designated 12 and 13 and the second pair 16 and 17. Diagonal fold lines 18, 19, 20 and 21 extend outwardly from the longitudinal fold lines 10 and 11 to provide folding web portions 33, 34, 35 and 36. Arched cut lines 22 and 23 are positioned near the ends of the blank to form the flaps 39 and 40. The extreme terminals of the blank are formed to provide tongues 24 and 25 which are adapted to snap into transverse cut lines 26 and 27 when the carton is set up. The patentee's description of the erection of the blank is as follows:

"Erection of the assembled carton is effected, as shown in Fig. 3, by first raising the end portion of the carton upwardly about the second-mentioned pair of transverse fold lines 16 and 17. As this is done, the diagonal fold lines 18, 19, 20 and 21, remaining close to the body of the end portions, causes the webs 33, 34, 35 and 36 to fold outwardly and upwardly with resulting setting-up of the side wall panels 30 and 31. The uppermost section of the resulting upstanding end portion of the carton structure is then folded inwardly and downwardly about the first-mentioned pair of transverse fold lines 12 and 13 until, as shown in Fig. 4, the tongue at the extreme end of the blank snaps into the transverse cut line in the bottom panel of the blank, these parts being the tongue 25 and the cut line 27 in the partial views shown in Figs. 3 and 4."

Vines asserts in his specifications and in his argument that his new structure is characterized by improved qualities in its end wall construction in the following manner: the result is achieved by the extension of the bottom central panel and of the two side walls which are folded so as to form end walls of double-double thickness; and when they are raised to a vertical position and the upper halves are folded inwardly and downwardly, the side walls are locked into position without glue,[1] and the inner portions of the end walls are locked in place by a tongue which engages a slot in the bottom panel. The arched shape cut mentioned in the above description makes possible a flap which contributes to this end since it permits the double end walls to be folded over on themelves to form the double-double thickness; and when the cut or flap assumes a horizontal position the flap reinforces the upper edge of the end walls. The web line extensions of the side walls are locked between the inner and outer portions of the end walls, so as to hold them rigid and erect when the tray is wrapped with cellophane, and also when loaded trays are stacked for transportation or display.

Whether these features differentiate the Vines box from prior structures in a fashion which was beyond the ability of persons skilled in the art is the crucial question in the case. It is the easier to answer because as will appear, the features on which Vines relies are indicated in earlier patented devices. The general form of the Vines blank was

---

imate transverse fold line, the ends of the blank being provided with an outwardly projecting tongue portion, and the body of the blank being provided with a substantially centrally disposed transverse cut line adjacent the inboard side of each of the transverse fold lines of said second pair thereof.

1. One form of the patent shows a blank provided with glue tabs projecting outwardly from a side of the blank near each end which are to join the extremities of the side portions when the blank is folded along the longitudinal fold lines. The Winkler patent No. 2,563,145 of 1948 discloses a box made without glue. It has tongues at one end of the blank which snap into slits to hold the structure erect; also without glue are the Acker Patent No. 2,573,379 of 1951 and the Painter Patent No. 2,555,655 of 1951.

old and was found in the cases cited above, and is also found in other patents to which reference has been made. All of them have cardboard flat blanks on which longitudinal, transverse and diagonal fold lines are similarly located and similarly used so that the finished article when it is set up has a similar appearance and serves the same ends. For our present purposes it is more important to note that the particular features of the patent in suit are also foreshadowed in earlier patents. The Draper patent No. 991,052 of 1911 for folding boxes made of paper or pasteboard was equipped with both inner and outer end walls of double thickness. The Grinnell patent No. 2,-532,808 of 1950 shows a reenforced end wall with an extension on the locking flap that snaps into a slot. The Feigleman patent No. 1,471,478 of 1923 and the Lee patent No. 2,136,797 of 1938 disclose the arch shaped flap cut from the end wall structure, and the Levkoff patent No. 2,274,714 of 1942 and the Grinnell patent show the tongue or tab with slot for insertion.

It is urged that these features are combined for the first time in Vines patent so as to provide a stronger tie-up of side and end walls and thereby create a box of greater strength and rigidity, but it is significant that both the Levkoff patent No. 2,342,551 of 1944, which is used by the Standard Folding Tray Company, and the Grinnell patent, which is used by the Associated Folding Box Company, have had great vogue and have been so successful as to lead the owner of the patent in suit to search for a competitive device.

 It is conceivable that when the Vines structure is put to the severe test of common use, to which it has not yet been subjected to any great extent, it may prove to be an improvement over the boxes now in use; but even if this should occur, it would not necessarily follow that it rises to the dignity of an invention. "A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162; Interstate Rubber Products Corp. v. Radiator Specialty Co., 4 Cir., 214 F.2d 546. In the pending case, as we have pointed out, the patentee has merely assembled desirable features of known structures which he was employed to examine; and even if in composing his structure he has combined these elements in a fashion somewhat different from that employed in earlier boxes, it is apparent that he has not made anything which was beyond the ability of workers of ordinary skill in this field to construct.

The judgment will be reversed and the case remanded with direction to dismiss the complaint.

Reversed and remanded.