STANDARD BOX CO. *vs.* WINCHESTER CARTON CORPORATION.

Suffolk. November 9, 1961. — February 9, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Contract,* License under patent, For royalties.

Following the making of a contract between the holder of a patent for a collapsible cardboard serving tray consisting of an open box having in it a framework or panel with orifices for containers of liquids, and a licensee of the patentee, wherein it was acknowledged that a tray then made by the licensee infringed specified claims of the patentee and the licensee was licensed to manufacture any tray falling within the specified claims, and it was provided in a paragraph 5 that "any tray . . . substantially similar [and reasonably close] in structure, design and function" to the licensee's then tray, "even if . . . improved . . . over" it, should be "covered by" the contract "and the royalty payments" required therein, a certain improved tray which the licensee commenced to manufacture and sell was within such paragraph 5 and the royalty provision of the contract even if the improved tray was not "covered by" any of the specified claims and irrespective of whether it infringed

the patent [573–574, 581–583]; but a further provision of the contract restricting the places of manufacture and sale by the licensee of a tray falling within the specified claims was inapplicable to the improved tray. [584]

BILL IN EQUITY, filed in the Superior Court on October 21, 1960.

The plaintiff appealed from a final decree dismissing the bill entered after hearing of the suit by *Brogna, J.*

*Phillip J. Nexon, (Richard Langerman* with him,) for the plaintiff.

*Arthur D. Thomson,* for the defendant.

WHITTEMORE, J.   The plaintiff (Standard) in this bill in equity for an injunction and damages contends that the making and sale by the defendant (Winchester) of a folding cardboard disposable food and drink serving tray, called Tote-M, violates an agreement of August 20, 1957, between the parties which settled a patent infringement suit.   Alternatively, Standard contends that Winchester owes it royalties on its sales of Tote-M trays.   The judge in the Superior Court found for the defendant on both issues and the final decree dismissed the bill.   The evidence is reported.

## THE AGREEMENT.

In the agreement of August 20, 1957, Winchester conceded the validity of Standard's patent and acknowledged that a tray then made by it, the Jiffy tray, infringed at least claims 11, 12, and 14.   Standard, in the agreement, gave Winchester a license to manufacture, use and vend "any tray which falls within, and the description of which would read upon, the said claims No. 11, 12 and 14."   Paragraph 2 (c) provided: "In no event shall serving trays . . . manufactured by Winchester be identical in design to the Standard tray or embody the design features and description set forth in claims 1 through 10 inclusive and claim 13 of said patent."

The case turns on paragraph 5 which, with a related clause, reads: "Whereas . . . the articles . . . manufactured [by Standard] under said patent . . . [are] known

as . . . 'Aw To Mat' tray[s] . . . [or] 'Standard' tray[s];
and Whereas Winchester manufactures a serving tray
substantially similar to the 'Aw To Mat' box, which it
markets under the name 'Jiffy' . . . which tray, together
with such other trays as may be manufactured by Winches-
ter under the grant of license herein made, and trays re-
ferred to in paragraph 5 hereinafter, are sometimes herein-
after collectively referred to as the 'Winchester Tray' or
'Winchester Trays' . . . . 5. Reference has been made
hereinabove to the inclusion of the 'Jiffy Tray' within the
definition of the 'Winchester Tray.' Without in any way
limiting the meaning of the term 'Winchester Tray' as
herein defined, it is of course to be understood that any tray
which is substantially similar in structure, design and func-
tion, or otherwise, to the 'Jiffy' tray shall be deemed to be
within the terms of this agreement even if, without in any
way limiting the generality of the foregoing, the Winchester
tray is improved to any degree in structure, design, etc.
over that presently manufactured, it being the intention
hereof that trays of any description which are reasonably
close in structure, design and function which are manufac-
tured from and after the date hereof shall be covered by
the within agreement and the royalty payments contained
herein." Paragraph 3 (b) calls for royalties on "Win-
chester trays (as that term is defined herein)."

In determining the scope and applicability of the license
and paragraph 5 we notice first the patent, in general terms,
then the three trays, Aw To Mat, Jiffy and Tote-M, and
then the licensed and the reserved claims.

## STANDARD'S PATENT.

Standard's patent (Goldberg Re. 24,233. October 30,
1956) shows use of the common device of grooving or scor-
ing folds in the short sides, or ends, of an open cardboard
box and collapsing the box so that the ends, folded on the
grooves, lie flat under the sides of the box. Such a col-
lapsed box may be reërected by lifting each end of the box.
In commercial practice the cardboard is cut, scored, folded
and pasted, sold flat, and erected for the first time when

used.   The elaboration shown in Standard's patent (see plate 1 herewith) puts into the erected box, lengthwise, a framework, with orifices in its top panel to hold paper cups or other containers of liquid, which is so attached to the box that the erection of the box by pressure on its sides also sets up the framework.   The service tray, ready for use, has an open space, the length of the tray, for sandwiches and the like, and, also the length of the tray, the framework to hold cups.   This framework is constructed from an extension of one of the sides of the box, which, as cut, if not folded, would rise much higher than the other three sides, but is in fact folded three times so as to bring the extra material down into the box.   The first fold is at the level of the top of the other side and the ends; the second fold is so placed as to become the front edge of the panel; and the third fold is so placed as to be the bottom of the front or partition wall of the framework.   This leaves a flap which is glued to the bottom of the box.   A box constructed precisely as just stated could not be collapsed, for the ends of the front supporting or partition wall of the framework would bar the inward down-folding of the ends of the box. Standard's patent overcomes this difficulty (and permits the box to be folded, or erected) by cutting away the lower corners of the front supporting wall.   The full width of the front supporting wall at the top is retained to form shoulders which hold the box in the open position against unintentional pressures.   The shoulders are, nevertheless, narrow enough, so that, being of flexible cardboard, the rising and descending ends of the box may be forced past them. The patent states that the "important advantages are the noncollapsible nature of the tray, the self-locking corners, the stiffness and rigidity, the adaptability to beverage receptacles of various size and its susceptibility to increasing its food capacity . . .."

Appropriate cuts and grooves in the panel of the Standard tray define each of several cup-holding orifices and permit the down-folding of flaps within the erected framework by the pressure of a cup thereon.

PLATE 1.

Oct. 30, 1956               A. G. GOLDBERG               Re. 24,233

AUTOMATIC SERVING TRAY

Original Filed March 22, 1952                    2 Sheets–Sheet 1

*Fig. 1*

*Fig. 2*

Inventor
Arthur G. Goldberg
by Roberts, Cushman & Grover
att'ys.

THE AW TO MAT, JIFFY AND TOTE-M TRAYS.

The Aw To Mat or Standard tray in evidence is substantially as shown in plate 1 except that the fronts of the cupholding orifices are coincident with the front of the panel, that is, with line 34 in plate 1.

Lifting of the end walls of the Aw To Mat tray causes to rise the attached rear side wall and also the cup-holding framework which is integral with that wall. Additionally, when the ends rise, they press against the partition wall along the concave cuts at its ends (plate 1, 56) and thus give lifting force directly to the partition wall.

The Jiffy tray is like the Standard tray except that the ends of the end walls are not attached to the rear side wall and there are precise engagements between the partition wall, at each end, and the adjacent end wall. The corners of the partition wall (compare plate 1, 56) are cut off on straight rather than on concave lines, and the ends of the partition wall above the cut corners are fitted into slots in the end walls and extend outside these walls. Thus, when the end walls of the Jiffy tray are lifted the partition wall is forced up by the positive engagements. This is the only way in the Jiffy tray of lifting the framework and the rear wall which is integral with it. The engagements described, together with the extension of the top panel over the end walls give some of the firmness, but not all, afforded by the Standard tray.

The Tote-M tray (plate 2) embodies a distinct improvement of the Standard and Jiffy trays. It is like the Standard tray in having all outside corners closed. It is unlike either earlier tray in having no engagement between the partition wall and the end walls. The most striking difference in the Tote-M tray is that the material for front support of the cup-holding framework is cut from the top panel at the places of the cup-holding orifices. This makes structural use of the material which in the Standard and Jiffy trays is disposed of in the cup-supporting flaps. By cutting each orifice along its back and sides, and bending down the section thus freed along the line of the front of

Standard Box Co. *v.* Winchester Carton Corp.

### PLATE 2.

the orifice and gluing the section to the bottom of the box, as many struts are obtained as there are orifices. The panel is adequately supported by the struts, and these take the place of the continuous section in the earlier trays. Among the advantages is a saving in material. Two folds of material required in the earlier structure are entirely eliminated.

### THE LICENSED CLAIMS.

Claims 11 and 12[1] are set out in the margin. Claim 11, in general terms, describes such a tray as Aw To Mat. Although it does not assert that the cup-holding framework is

---

[1] "11. In a serving container of the kind wherein front and rear side walls and left and right end walls are hinged to the edges of a rectangular bottom wall, and wherein the front and rear side walls are so connected at their ends to the corresponding ends, respectively, of the left and right end walls that the front and rear side walls and the left and right end walls may be folded down against the bottom wall, the connections between the ends of the front and rear side walls and the left and right end walls being so constructed and arranged that when the side and end walls are disposed perpendicularly to the bottom wall they tend to remain in upright position, in combination, a panel hinged along one edge to the upper edge of the rear side wall, a partition wall hinged along one edge to the opposite edge of the panel and an

collapsible together with the side and end walls, it describes a box with all four corners connected, and with an attached framework. It is, therefore, a box which, when the ''front and rear side walls and the left and right end walls . . . [are] folded down against the bottom wall,'' as claim 11 describes, will inevitably fold down the framework. The lifting of the end walls also inevitably will lift the framework.

Claim 12, by contrast, specifies only that ''the ends of *one* [emphasis supplied] of said side walls . . . [are] directly connected to the ends of the end walls.'' It goes on to describe the ''inclined edges'' of the partition wall ''which overlie the end walls . . . and which are engaged . . . by the upper edges of . . . [the] end walls as the latter are raised . . ., the engagement . . . being operative to raise the partition wall . . ..'' This description resembles that of the Jiffy tray, the difference being that no slot in the end walls is described as in the Jiffy tray.

Claim 14 separately specifies the supporting shoulders which are included in the Aw To Mat tray and in claim

---

attaching flap hinged to the other edge of the partition wall, the flap extending rearwardly from its junction with the partition wall and being permanently attached to the bottom wall, the partition wall having recesses at its opposite ends to accommodate the right and left end walls, respectively, when the latter are folded downwardly, the partition wall comprising shoulder portions, above said recesses, engageable with the inner surfaces of the right and left end walls, respectively, when the latter are in upright position thereby positively to hold said walls upright, the panel extending outwardly beyond the right and left end walls when the latter are in upright position and having an aperture between its ends for the reception of a container.

''12. A substantially rectangular container having a bottom and side and end walls, the ends of one of said side walls being directly connected to the ends of the end walls, hinges being formed adjacent the connections permitting collapse of said walls, a partition wall hingedly connected to the bottom parallel to said side walls, said partition wall having its ends spaced from the adjacent end walls at the points where they are secured to the bottom by an amount not substantially greater than the height of said end walls, and having near its ends inclined edges which overlie the end walls when the latter are collapsed, and which are engaged substantially throughout their lengths by the upper edges of said end walls as the latter are raised to vertical position, the engagement of the edges of the end walls with said inclined edges being operative to raise the partition wall to a vertical position, and a panel spanning the compartment defined by the partition wall, the other of said side walls parallel thereto and portions of said end walls, said panel being hinged at its opposite longitudinal edges to said partition wall and to one of said side walls, respectively, and the partition wall and panel being collapsible together with said side and end walls.''

11: "A container as defined in claim 12 wherein said partition wall has at its opposite extremities shoulders arranged to abut the inner surfaces of the respective end walls when the latter are in erected position."

### THE RESERVED CLAIMS.

The parties have agreed that claim 2, set out in the margin[1] may be taken as representative of claims 1 to 10. This is a general description of the device similar to the first part of claim 11 with the express statement that "the partition wall and panel . . . [are] collapsible together with the side and end walls."

Claim 13 specifies a detail of the Aw To Mat box: "A container as defined in claim 12 wherein said inclined edges are concave."

### THE TOTE-M TRAY UNDER CLAIMS 11, 12, AND 14.

Winchester contends that the Tote-M tray is entirely outside the license and the patent. In its view the Tote-M tray does not infringe the broad claim 2, and necessarily therefore does not come under claims 11, 12, and 14. The argument stresses that Standard's patent is to be narrowly construed, for as the trial judge found, it is in a crowded art. See *Associated Folding Box Co. Inc.* v. *Levkoff,* 194 F. 2d 252 (1st Cir.). Burel, patent 2,160,643, May 30, 1939, shows a "folding box having a bottom and a top integrally formed and having side walls and end walls which are adapted to be collapsed so that their inner faces lay [sic] adjacent the inner face of the base wall and top walls." Peiker, patent 2,512,963, June 27, 1950, shows a serving tray with cup-

---

[1] "2. A substantially rectangular container having a bottom and side and end walls, the ends of the side walls being directly connected to the ends of the end walls and each pair of walls having, near their ends, hinges permitting collapse of one pair of walls onto the bottom and collapse of the other pair of walls onto the first pair of walls, a partition wall hingedly connected to the bottom parallel to one pair of said walls, said partition wall having its ends spaced from the adjacent walls at the points where they are secured to the bottom, a panel spanning the compartment defined by the partition wall, one of the walls parallel thereto and the walls which extend at right angles to the partition, said panel being hinged at its opposite longitudinal edges to the partition wall and to one of the walls parallel to the latter, respectively, and the partition wall and panel being collapsible together with the side and end walls."

holding panels formed from scored and folded extensions of the sides of the tray. Although the top of the tray is prepasted to the front, the tray is to be erected by appropriate folding and engaging just prior to use. Walters, patent 2,294,641, September 1, 1942, discloses a collapsible box designed as a display device and having at one end a collapsible compartment defined by partition and panel walls, the partition wall within the box having an end cut off on a curved line "to permit of inward swinging movement of the side wall . . . when the device is being collapsed." In this patent also, although a flap is prepasted, folding and engagement are required just prior to use. Winchester points out that the partition wall in the Tote-M tray is not hinged to the front *edge* of the panel as described in claim 2 and other claims but, by contrast, descends from the panel a short distance inward from the edge, and that there are struts rather than a single partition wall. Winchester mentions also the firm ledge of the panel extending forward of the partition wall, but, as noted, the patent drawing shows what might be called a ledge behind the partition wall. The advantages of the different construction give significance thereto so that the change is not a mere device to escape infringement in substance by an insignificant change in form. Less material, less cost, less shipping weight, the opportunity to gain strength by making the tray lengthwise with the grain of the material, and an automatically opened compartment in which small items, such as pieces of candy, cannot be concealed are asserted in credible testimony as among the advantages.

In our view of paragraph 5 nothing turns on the technical issue of infringement and we do not decide it.

### The Tote-M Tray under Paragraph 5.

1. Winchester contends that a royalty is due under paragraph 5 only if the Tote-M tray is "covered by at least one" of the licensed claims 11, 12, and 14. We disagree. Paragraph 5 is not mere surplusage. If the intention was only to overcome the possible restriction of the "and" in the

grant of a license under "claims 11, 12 *and* 14" (emphasis supplied), the obvious way to do so would have been to substitute "or." That paragraph 5 expanded the license is recognized in the "Whereas" clause which defines "Winchester Tray" to include the Jiffy tray "together with such other trays as may be manufactured by Winchester under the grant of license herein made, *and trays referred to in paragraph 5* . . ." (emphasis supplied).

We hold, for the reasons next stated, that the Tote-M tray is an improvement of the Jiffy tray which is within the contemplation of paragraph 5.

The Tote-M tray embodies the basic feature of a cup-supporting framework integral with the top of the back wall of the tray and attached to the tray at the bottom of its front support, together with engagement devices such that lifting the ends will lift the framework and the back and front walls. The Tote-M tray makes the engagement for erecting the framework at the back corners alone, rather than at the ends of the partition wall alone as does the Jiffy tray, or at the back corners and also at the ends of the partition wall as does the Standard tray. Neither Winchester nor Standard contends that this is a significant difference. The agreement in a "Whereas" clause asserts that the Jiffy tray is "substantially similar to the 'Aw To Mat' box." Winchester's brief says, "[T]he construction of . . . [the Jiffy] tray differs from the patented tray [Aw To Mat] only in one relatively minor respect, namely, that, at two corners, the side walls . . . [are] not connected to the end walls." Standard contends that "Tote-M and Jiffy are 'substantially similar in structure, design and function' " so that "the Tote-M tray falls clearly within the plain language of paragraph 5." The use of the back corner engagement is described in licensed claim 11. The cutout lower corners of the front supporting or partition wall of the Standard and Jiffy trays to allow folding are, in substance, reproduced in the Tote-M tray in the spaces between the end struts of the Tote-M tray and the adjacent end walls. The support given to the older trays in erected posi-

tion by the shoulders of the front partition wall is secured in the Tote-M tray by the raised shoulder on the back top corner of each end wall, which butts against the top panel. In the Tote-M tray, as in the older trays, there are ears or wings left in the orifices to support the cups. All the features listed in the patent as the important advantages are in substance included. The significant change is, as Winchester emphasizes, the fashioning of the struts from the material cut from the cup orifices. But this change, for the reasons noted, left the tray "substantially similar in structure, design and function" to the Jiffy tray, that is, "improved" in these features, but "reasonably close" in respect thereof for purposes of the agreement.

This conclusion is justified even though (1) Standard's patent, in an infringement suit, would be held at best a minor advance and (2) the Tote-M improvement is itself patentable. The concession in the agreement of patent validity determines for this suit that there was an invention; that is, something more than a combination of old elements without significant innovation. See *Associated Folding Box* case, *supra*, 257. For purposes of paragraph 5 that invention is a tray with features embodied in the Jiffy tray and the Aw To Mat tray to which it is "substantially similar." Paragraph 5 gives protection to this invention beyond that which would be given by the patent alone. Thus, even if, because of the crowded art, the different method of obtaining front support for the framework would not be an "equivalent" in patent construction (see *Deitel* v. *Cohen*, 40 F. 2d 263 [2d Cir.] ; *Deitel* v. *Unique Specialty Corp.* 54 F. 2d 359 [2d Cir.]), which we do not decide, it is "reasonably close" under paragraph 5.

Winchester objects that this construction excludes it "from an activity which other competitors could freely pursue," that is, the making, royalty free, of "trays not within the claims of the patent," and that such intention should expressly appear. But Winchester is excluded only in a limited penumbral area and that exclusion appears to be the purpose of paragraph 5.

By virtue of paragraph 4 of the agreement Winchester will not be required to pay royalties on an improved tray, such as Tote-M, if "claims 11, 12 or 14 . . . shall be declared invalid and unenforceable by a final judgment," and if other terms are met. Thus, our construction of paragraph 5 has no aspect of unreasonable expansion of the royalty obligation.

2. We hold that the restriction of paragraph 2 (a) that Winchester is not to "manufacture . . . any trays which *fall within, or the description of which would read upon,* . . . claims Nos. 11, 12 *and* 14, [emphasis supplied] (including, without limitation, the said 'Jiffy' trays) outside the Commonwealth," and may not sell any such trays elsewhere than in New England and parts of New York and New Jersey, does not apply to the Tote-M tray. The omission of paragraph 2 (a) to restrict the manufacture and sale of improved trays under paragraph 5 is significant. The selective language used in the restriction points to a narrow and precise construction.

3. The parties tried and have argued the case on the premise that paragraph 2 (c) is the equivalent of an agreement not to infringe claim 2. Although the bill alleges that the Tote-M tray "embodies some of the design features and description set forth in claims 1 through 10, inclusive, and claim 13 . . . thus violating . . . 2 (c)" and the answer admits that the " 'Tote-M' tray embodies 'some' . . . [but not all] of the design features and description" of those claims, the parties stipulated as the hearing began that that issue should be resolved by decision "whether the [Tote-M] tray . . . infringes claim 2." We question whether paragraph 2 (c) means what this stipulation apparently assumes. The intent may have been to bar Winchester from making a tray "identical in design to the Standard tray." This would be a recognition that, except for the restrictions, Winchester under claims 11, 12, and 14 could probably make such an identical tray. Whatever the meaning may be, however, we deem it unnecessary to determine whether the Tote-M tray infringes claim 2. If it does, it is in respects

which have been expressly licensed by other provisions of the agreement. The parties have presented for determination their rights under the agreement. We do not construe the stipulation to be a modification of paragraph 5 of the agreement, and we deem to be implied in the stipulation the proviso that action permitted by paragraph 5 in its context, including paragraph 2 (c), is not to be construed as a violation of paragraph 2 (c). *Derderian* v. *Union Mkt. Natl. Bank,.* 326 Mass. 538, 539–540.

4. There is evidence of royalties due but the computation should be made in the Superior Court.

5. The decree is reversed and a decree is to enter in accordance herewith.

*So ordered.*