**WINCHESTER CARTON CORPORA-
TION, Plaintiff,**

v.

**STANDARD BOX CO., Defendant.**

**Civ. A. No. 66-373.**

United States District Court
D. Massachusetts.

Jan. 17, 1969.

Arthur D. Thomson, Boston, Mass., for plaintiff.

Herbert P. Kenway, Boston, Mass., for defendant.

## OPINION

GARRITY, District Judge.

This is an action for patent infringement. Defendant has filed a counterclaim in which it seeks a declaratory judgment that plaintiff's patent is invalid. After trial without a jury, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Both plaintiff and defendant are engaged in the manufacture and sale of paperboard serving trays for use primarily at drive-in theaters for carrying beverage cups and sandwiches from a serving station to an automobile.

2. The parties are not strange adversaries. In Standard Box Co. v. Winchester Carton Corp., 1962, 343 Mass. 572, 180 N.E.2d 315, defendant charged that the manufacture and sale of so-called TOTE-M trays by plaintiff violated a restrictive clause of a license agreement between the parties. The license agreement was the product of still earlier litigation between the parties in which defendant had claimed that certain of plaintiff's trays infringed defendant's Goldberg Patent No. 2,679,971 dated June 1, 1954, reissued October 30, 1956 as Re. 24233.

3. The patent presently in issue, No. 3,189,247, issued June 15, 1965 to plaintiff as assignee of the inventor, Henry F. Wischusen, plaintiff's president. Although the application for the patent was not filed until March 17, 1964, the tray was actually invented no later than January of 1960.

4. The principal purpose and general characteristics of the patent in issue were described as follows in the application:

"The principal purpose of the present invention is to provide a paperboard serving tray in which the panel portion is so constructed that the cup holes are automatically opened when the tray is set up, so that cups can be inserted without breaking down divided tabs or flaps which normally close the holes or apertures of the panel, and so that the automatically deflected tabs provide supporting struts for the inner margin of the panel.

"As compared with trays of the character disclosed in Re. 24,233, the improved carry-out tray requires less paperboard and is accordingly less expensive to manufacture and weighs less in shipment; the opened cup holes ensure speedier service and greater convenience; and the absence of a continuous wall along the inner edge of the elevated panel renders the tray substantially pilfer proof by preventing a food product from being hidden under the panel."

5. As part of the application Mr. Wischusen made oath as follows:

"I do not know and do not believe that this invention was ever known or used before my invention or discovery thereof, or patented or described in any printed publication in any country before my invention or discovery thereof, or more than one year prior to this application or in public use or on sale in the United States for more than one year prior to this application."

6. The claims ultimately allowed by the Patent Office are as follows:

"1. A serving tray formed from a blank of paperboard and comprising a bottom, a front wall, a rear wall and a pair of end walls, providing a tray body, the end portions of the front, rear and end walls being adhesively connected so that said walls may be collapsed onto the bottom or swung upright relative to said bottom when the body is set up, a panel hingedly connected to the upper edge of the rear wall and foldable inwardly onto the erected body, the panel having a plurality of partially cut-out flaps hinged thereto and foldable downwardly to form cup holes in the panel, certain of said flaps having foldable end portions cemented to the tray bottom intermediate the front and rear walls, said last-named flaps constituting spaced struts supporting the free

margin of the panel in parallel relation to said bottom, said panel and said struts being collapsible onto the bottom and the collapsed walls, and the cup holes being automatically opened when the tray is set up, the panel having opposite end portions extending outwardly beyond the respective end walls and resting thereon.

"2. A serving tray as described in claim 1, said flaps being hinged to the panel in a line disposed in spaced parallel relation to the free inner edge of the panel.

"3. A serving tray as described in claim 2, certain flaps adjacent the end portions of the panel being folded downwardly and outwardly against said end walls, and edges of said flaps being in engagement with the tray bottom, said flaps bracing the panel ends and tending to prevent collapse of the end walls of the set up box."

7. The opinion of the Supreme Judicial Court of Massachusetts in the license agreement case was handed down on February 9, 1962 and published sometime later in the same year in the advance sheets. In 1963, it was published in the United States Patents Quarterly, 132 USPQ 523, Jul-Sept '63, as well as in the Massachusetts Reports. The opinion includes two plates, one depicting defendant's Goldberg tray and the other plate depicting plaintiff's Tote-M tray.

8. The opinion of the Supreme Judicial Court describes the plaintiff's Tote-M tray in comparison with the defendant's Goldberg tray (also called the Aw To Mat or Standard tray) and with another tray made by the plaintiff, the Jiffy tray, as a licensee of the Goldberg patent, as follows at p. 577, 180 N.E.2d at p. 320:

"The Tote-M tray (plate 2) embodies a distinct improvement of the Standard and Jiffy trays. It is like the Standard tray in having all outside corners closed. It is unlike either earlier tray in having no engagement between the partition wall and the end walls. The most striking difference in the Tote-M tray is that the material for front support of the cup-holding framework is cut from the top panel at the places of the cup-holding orifices. This makes structural use of the material which in the Standard and Jiffy trays is disposed of in the cup-supporting flaps. By cutting each orifice along its back and sides, and bending down the section thus freed along the line of the front of the orifice and gluing the section to the bottom of the box, as many struts are obtained as there are orifices. The panel is adequately supported by the struts, and these take the place of the continuous section in the earlier trays. Among the advantages is a saving in material. Two folds of material required in the earlier structure are entirely eliminated."

And, at p. 581, 180 N.E.2d at p. 321:

"Winchester points out that the partition wall in the Tote-M tray is not hinged to the front edge of the panel as described in [the Goldberg patent's] claim 2 and other claims but, by contrast, descends from the panel a short distance inward from the edge, and that there are struts rather than a single partition wall. Winchester mentions also the firm ledge of the panel extending forward of the partition wall, but, as noted, the patent drawing shows what might be called a ledge behind the partition wall. The advantages of the different construction give significance thereto so that the change is not a mere device to escape infringement in substance by an insignificant change in form. Less material, less cost, less shipping weight, the opportunity to gain strength by making the tray lengthwise with the grain of the material, and an automatically opened compartment in which small items, such as pieces of candy, cannot be concealed are asserted in credible testimony as among the advantages."

9. The Tote-M tray pictured and described in the 1962 opinion has been manufactured and sold by plaintiff and has been in public use since about April,

1960. A sample of the Tote-M tray was received in evidence.

10. Also received in evidence were samples of the "Jiffy" tray formerly manufactured by the plaintiff and of the defendant's "Aw To Mat" and "Snack Time" trays.

11. A model of the patent in issue (hereinafter the "Wischusen" tray) was also marked as an exhibit. The plaintiff has never manufactured commercially or sold trays embodying all the features disclosed in the patent in suit. Plaintiff has, however, marked Tote-M trays which it has recently manufactured and which are identical to those portrayed in the 1962 court opinion with the following words:

"MFG. UNDER LICENSE
GRANTED UNDER U. S. PATENT
OCT. 1956 #RE24,233
AND
JUNE 15, 1965 #3,189,247"

12. The principal features of the Wischusen tray are incorporated in plaintiff's Tote-M tray which plaintiff has been marketing since 1960. The differences between the Tote-M and Wischusen trays are relatively minor, as follows:

A. Although on both trays and struts, which consist of flaps cut out from the top panel, are bent downwardly toward the bottom of the box, the struts are folded outwardly toward the front wall and cemented to the bottom on the Tote-M tray, whereas they are folded inwardly toward the rear wall on the Wischusen tray. This difference is purely a matter of choice. Moreover, the Goldberg tray depicted in the 1962 opinion includes a partition wall (in lieu of struts) which is folded inwardly.

B. On the Tote-M tray the top panel terminates at the side end walls, whereas on the Wischusen tray the top panel is extended so that it overlies and is supported by the side end walls. This difference, by itself, is insignificant because the top panel is adequately supported by the struts alone. No weight is placed upon the panel when the box is in use. Moreover, this overhanging feature is set out in the drawing of the Goldberg tray in the 1962 opinion.

C. The flaps cut out of the top panel which are nearest its ends on either side are different in that they extend down as far as the bottom of the Wischusen tray when it is unfolded for use and do not contact the bottom of the Tote-M tray when in use but hang about ¼ inch above the bottom. These flaps on the Wischusen tray act as braces against the side walls of the tray when in use, tending to prevent collapse of the side walls at the rear corners. This problem is handled in the Tote-M tray, in which there is no overhang of the ends of the panel, by arc-shaped upper edges of inside rear corner supporting pieces which rise about ¼ inch above the level of the panel thereby preventing the side walls at the rear corners from folding inwardly. In the Wischusen tray, the corresponding upper edges are flat and flush with the top of the side walls. This difference, insofar as it serves to keep the side walls upright, is related to Wischusen's elimination of the raised side corner pieces and its use of an overhanging panel, which is a matter of choice. Moreover, side flaps cut out of the top panel and extending down as far as the bottom of the tray are found in the Jiffy tray formerly manufactured by the plaintiff. True, their bracing effect upon the side walls was secondary to a slotted interlocking feature which need not be described in detail, and the rear corners of the Jiffy tray did not have so great a tendency to collapse, but the side flaps are still essentially the same.

13. No reference is contained in the file wrapper of the patent in issue to the drawing and description in the 1962 publication of the plaintiff's Tote-M tray or to the fact that plaintiff had been manufacturing and selling the Tote-M tray since 1960.

14. The patented tray was designed by Wischusen about January, 1960. On January 20, 1960, Wischusen brought models to the office of his patent attor-

ney and, after receiving his opinion that it was patentable, instructed him to file an application. In April, 1960, plaintiff started manufacturing and marketing the Tote-M tray. In a letter to defendant's counsel dated July 20, 1960, plaintiff's patent counsel referred to the Tote-M tray as "a rather distinctive departure from either the Jiffy or the Aw To Mat trays, inasmuch as the erection of the tray automatically opens the cup holes of the panel (a change which is quite unique as compared with the former trays, and which is the subject of a patent application still in process of preparation). * * *" On October 21, 1960 defendant sued plaintiff in the state court for violation of the licensing agreement based upon the Goldberg patent, Re. 24,233. Plaintiff's counsel decided to postpone filing an application for a patent on the Wischusen tray until after the state court suit had ended.

15. The Jiffy tray, formerly manufactured by the plaintiff, had been marketed by the plaintiff prior to August 20, 1957, the date of the licensing agreement between the parties which was the subject of the state court litigation.

16. Because of the court's opinion on the issue of validity of the Wischusen patent, the court makes no findings on questions of infringement.[1]

### Conclusions of Law

■ Defendant's claim of invalidity rests entirely upon the prior publication and prior use provisions of 35 U.S.C. § 102(b):

"A person shall be entitled to a patent unless * * *

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

In patent law parlance, if a patented invention has been the subject of a prior publication or prior use, it is said to have been "anticipated."

The prior publication asserted by the defendant consists of the two plates in the 1962 opinion of the Supreme Judicial Court of Massachusetts. The two plates appear on successive pages of the opinion and together they illustrate all the features of the Wischusen tray except the lengthening of the side flaps so that they may contact the bottom of the tray.

Plaintiff contends that in order for there to be an anticipation by prior publication the anticipation must be complete, i. e., that the anticipation must completely disclose in one publication (in this case, one plate) all the elements of a patented invention in the same combination in which they exist in that invention. In support of this position, plaintiff relies heavily upon the following introductory provision of § 103:

"A patent may not be obtained though the invention is not *identically* disclosed or described as set forth in section 102 of this title * * *" (Emphasis supplied.)

and the proposition that "Section 103 indicates that Sections 101 and 102 prevent patentability only where the invention was 'identically disclosed' by the prior art." Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 2 Cir., 1967, 372 F.2d 263, 267.

■■ This issue arises because the Wischusen tray was invented at least two years before the publication of the 1962 opinion. If the publication had preceded the date of invention, it would be unnecessary to determine whether § 102

[1]. Defendant conceded several times at the trial that its Snack Time tray infringed the patent on the Wischusen tray and that consequently the sole issue in the case was the validity of plaintiff's patent. And, on the basis of defendant's concession, the court excluded testimony offered by the plaintiff to establish infringe-

ment. However, at the conclusion of plaintiff's evidence, plaintiff requested that defendant stipulate that it conceded that all three claims were infringed. Defendant indicated that a written stipulation with respect to this matter would be filed but this has not been done.

(b) requires complete anticipation because the two plates together would render at least claims 1 and 2 obvious under § 103, which provides that a patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious *at the time the invention was made* to a person having ordinary skill in the art to which said subject matter pertains." (Emphasis supplied.) Clearly the test of obviousness under § 103 applies as of the date of the invention. See, e. g., Application of Foster, 1965, 343 F.2d 980, 990, 52 CCPA 1808, cert. denied 383 U.S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307; but see Note, 52 Geo.Wash. L.Rev. 656 (1964). Therefore, since the date of invention in this case precedes the publication of the two plates, § 103 is inapplicable and the court must consider the problem of "complete anticipation" under § 102(b).

█ In *Application of Foster* the court ruled that a requirement of complete anticipation is inconsistent with the policy behind the Patent Act and its statutory history. 343 F.2d at 987–989. This court will not embark here on an analysis of the policy and history of the Patent Act which has already been well done in the *Foster* opinion and elsewhere. See Dix-Seal Corporation v. New Haven Trap Rock Company, D.Conn., 1964, 236 F.Supp. 914; Note, 34 Geo.Wash.L.Rev. 376 (1965); Note, 54 Geo.L.J. 720 (1966). On the basis of its interpretation of legislative policy encouraging diligence in the filing of patent applications and its understanding of the statutory history, the court adopted the controversial rule that an invention is anticipated when by virtue of one or more publications (or by other means) it has become obvious one year before the patent application to one skilled in the art. This rule in effect engrafts the obviousness test of § 103 upon § 102(b) and makes that test applicable not only at the date of invention (under § 103) but also one year prior to the patent application (under § 102(b)). Note, 54 Geo. L.J. at 724, 725.

The *Foster* rule is not without its critics. See, e. g., Illinois Tool Works, Inc. v. Continental Can Company, N.D. Ill., 1967, 273 F.Supp. 94, 105, 106. Nevertheless, the court considers that its application is particularly appropriate in the present case in which claims 1 and 2 involve no more than a combination of features which are clearly revealed in the two plates of the 1962 opinion. Of course, the act of combination may itself be an inventive act; however, in order to be inventive the combination must produce a new result or operation. Even in the case relied upon by plaintiff, the court states that "[w]hatever be the aggregate the whole must exceed the sum of the several contributing elements." Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., supra 372 F.2d at 268. Thus, the proposition stated by the same court at 267, relied upon by plaintiff and quoted supra, that "Section 103 indicates that Sections 101 and 102 prevent patentability only where the invention was 'identically disclosed' by the prior art," must be understood in a factual context which involved an inventive or non-obvious combination of several known elements. As the court demonstrates in Dix-Seal Corporation v. New Haven Trap Rock Company, supra, 236 F.Supp. at 917–918, many of the cases which condition a defense under § 102(b) upon strict identity between a prior publication and a patented invention (i. e., complete anticipation) involve a factual context like that in the *Ling-Temco-Vought* case in which the invention is clearly not an obvious extension of the prior publication. Accordingly, the *Dix-Seal* court reasons that these cases uphold the various patents in question not on the basis of the rule of complete anticipation but because the patents are non-obvious improvements over the prior publications.

The theory that two or more items may together constitute a "prior publication" under § 102(b) was not new

with *Foster*. This theory, involving a "plurality of references," has been aptly justified in McCullough Tool Company v. Well Surveys, Inc., 10 Cir., 1965, 343 F.2d 381, 398, 399:

"It is suggested, however, that Pringle is nothing more than an aggregation of elements old in the art * * *. Of course, to establish anticipation in such a situation, it is not necessary that all of the elements be found in a single patent or publication. It is enough if the whole of the prior art considered together discloses all of the claimed elements and that no new functional relationship arises from their combination. * * * In order to anticipate a patent for a combination, the prior art must disclose all of the elements of such combination or their mechanical equivalents, functioning in substantially the same way to produce substantially the same result."

■ The court concludes that the two plates contained in the 1962 opinion constitute a prior publication of claims 1 and 2 of the Wischusen patent so that the patent is invalid with respect to these claims. The court is not unaware that in doing so it is in effect deciding that claims 1 and 2 represent merely a combination of known elements that was obvious to one skilled in the art one year prior to the date of application for the Wischusen patent. This is a decision that the Court of Appeals for this Circuit has warned must be made with great caution. Colourpicture Publishers v. Mike Roberts Color Productions, 1 Cir., 1968, 394 F.2d 431, 434.[2] However, in accordance with the tests set out in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the court has considered with respect to claims 1 and 2 the scope and content of the prior art and the differences between the prior art and the claims at issue. The court concludes that the combination of the various features of the two plates in the 1962 opinion was not beyond the level of ordinary skill of the layman much less that of the paperboard box manufacturer.

Claim 3 of the Wischusen patent is somewhat different in that it embraces a feature—cut-out flaps adjacent to the ends of the panel—which does not have a counterpart in the details of either plate appearing in the 1962 court opinion. As explained in paragraph 12 of the findings of fact, these flaps have a negligible effect regarding bracing of the panel ends, but do tend to prevent collapse of the side walls near the rear corners of the tray. An analogous claim was considered and held unpatentable in Associated Folding Box Co. Inc. et al. v. Levkoff et al., 1 Cir., 1952, 194 F.2d 252, in which Judge Woodbury wrote for the court at 257:

"The specific problem to which Levkoff addressed himself, that of providing stiff ends for a collapsible box or tray which could be cheaply stamped out of a single sheet of cardboard and quickly erected, was not particularly old, and it would not seem to be especially baffling."

■ Upon consideration of the prior art including the plaintiff's own Jiffy and Tote-M trays and the nature of the claimed improvement, the court concludes that claim 3 was obvious to a person having ordinary skill in the art more than one year before the application for the Wischusen patent.

■■ The court likewise sustains the defense of prior use under § 102(b). On the preliminary question whether the prior use must be a complete anticipation of the patent in suit, cf. Dix-Seal Corporation v. New Haven Trap Rock Company, supra, 236 F.Supp. at 920, cases dealing with this issue in the area of prior use have been explicit in rejecting a requirement of complete anticipation. See, e. g., International Tooth Crown Co.

2. Colourpicture Publishers arose under § 103. However, the court assumes, in the absence of any indication to the contrary, that the nature of the test of obviousness under § 102(b) as interpreted by *Foster* is the same as that under § 103.

v. Gaylord, 140 U.S. 55, 62, 11 S.Ct. 716, 35 L.Ed. 347 (1891); Tool Research and Engineering Corp. v. Honcor Corp., 9 Cir., 1966, 367 F.2d 449, 453; 2 Walker on Patents (2nd Deller Ed., 1964) § 141. The court again adopts the holding of *Application of Foster,* supra, incorporating an obviousness test into § 102(b).

The Tote-M tray was essentially the same as the patent in issue and indeed was probably an improvement upon the patent in issue. The Wischusen tray was designed in January 1960, and Tote-M was marketed beginning in April, 1960. Wischusen had intended that a patent be applied for in 1960 but, for reasons best known to the plaintiff and its attorney, plaintiff chose to litigate the applicability of a licensing agreement to its Tote-M tray rather than to file an application with the Patent Office. The dust of the battle in the state court having settled, it appears that the plaintiff may have been hoist by its own petard.

The court has followed the comparative approach heretofore explained and concludes that Wischusen's combination of the various features of trays in public use and on sale in this country was obvious more than one year prior to the date of the application to a person having ordinary skill in the art.

The court's decision that the Wischusen patent is invalid is supported by several secondary considerations. The evidence disclosed no long-felt need for the patent in issue. It has not even yet been produced commercially, except to the extent that plaintiff's Tote-M trays are now marked with the Wischusen patent number, and therefore cannot be said to have met with commercial success. Furthermore, neither the plaintiff's Tote-M tray nor its predecessor Jiffy tray was before the Patent Examiner who approved Wischusen's application, a fact

which detracts from the presumption of validity of the patent.

Judgment will be entered [3] dismissing the complaint and declaring that Patent No. 3,189,247 is invalid.

---

3. The court denies defendant's request for an award of counsel fees under 35 U.S.C. § 285. When the Wischusen application was filed in March, 1964, the Application of Foster decision expanding the scope of § 102(b) had not been made and a leading case was Application of Palm-

quist, 1963, 319 F.2d 547, 51 CCPA 839 which held that obviousness should be considered and determined only as of the time when the invention was made. Also plaintiff's reliance upon the doctrine of complete anticipation was plainly in good faith.